UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CINDY LOU DAVIS,

                          Plaintiff,

v.                                                    Case No: 6:14-cv-610 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                      HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 South State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.          KRISTINA COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Cindy Lou Davis ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 18, 19.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 18, 1964. (T. 84.) She received her GED. (T. 110.) Generally, Plaintiff's alleged disability consists of cancer, back impairment, and depression. (T. 105-106.) Her alleged disability onset date is February 19, 2006. (T. 102.) Her date last insured is December 31, 2010. (*Id.*) She previously worked as a certified nurse's aide ("CNA"). (T. 106.)

### B. Procedural History

This case has a long procedural history. On March 21, 2006, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 105.) Plaintiff's application was initially denied and her claim was dismissed as untimely, but on June 29, 2007 the Appeals Council ("AC") remanded the matter for a hearing before an Administrative Law Judge ("ALJ"). (T. 64-66.) While awaiting the AC decision Plaintiff filed a subsequent application for benefits on April 27, 2007, which was combined with her March 21, 2006 application. On December 11, 2007, Plaintiff appeared before ALJ Robert E. Gale. (T. 343-362.)

### i.) 2008 Decision by ALJ Gale.

On April 25, 2008, ALJ Gale issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-22.) First, ALJ Gale found that Plaintiff met the insured status requirements through December 31, 2010 and Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 17.) Second, ALJ Gale found that since her alleged onset date of February 19, 2006, Plaintiff had the

severe impairments of cancer of the larynx (in remission), lumbar spine degenerative disc disease ("DDD"), depression and anxiety. (T. 18.) Third, ALJ Gale found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 19.) Fourth, ALJ Gale found that Plaintiff had the RFC to perform light work; however, she was limited to simple, tasks, could learn new simple tasks, could maintain attention and concentration, and could work in a low stress environment. (*Id.*) Fifth, ALJ Gale found Plaintiff was unable to perform her past relevant work; however, there were a significant number of jobs that existed in the national economy which Plaintiff could perform. (T. 21.)

On December 22, 2008, the AC denied Plaintiff's request for review (T. 5-7) and Plaintiff timely commenced a civil action with this Court (No. 6:09-CV-0186).

### ii.) 2010 District Court Remand ("*Davis I*").

On June 3, 2010, United States Magistrate Judge George H. Lowe issued a Report-Recommendation that the matter be remanded for further administrative proceedings. On June 21, 2010, United States District Judge Lawrence E. Khan adopted the Report-Recommendation and Ordered that the Commissioner's finding that Plaintiff was not disabled be vacated and the matter remanded for further proceedings. *Davis v. Astrue*, No. 6:09-CV-186, 2010 WL 2545961 (N.D.N.Y. June 3, 2010) *report and recommendation adopted,* No. 6:09-CV-186, 2010 WL 2545694 (N.D.N.Y. June 21, 2010).

In *Davis I*, the Court found: 1) the ALJ erred in his step three analysis, because the evidence indicated that Plaintiff may have met Listing 1.04A, 2) the ALJ erred in his

3

assessment of Firooz Tabrizi, M.D.'s medical opinion, 3) the ALJ erred in his assessment of Zoltan Teglassy, M.D.'s medical opinion, 4) the ALJ's RFC assessment failed to take into consideration limitations imposed by Myra Shayevitz, M.D., 5) the ALJ's credibility analysis was not supported by substantial evidence, and 6) the ALJ erred in relying on the Medical-Vocational Guidelines ("the Grids"). *Davis*, 2010 WL 2545694 (N.D.N.Y. June 21, 2010).

While *Davis I* was pending, Plaintiff filed another application for benefits on August 21, 2008, which was denied on February 18, 2009. Plaintiff timely requested a hearing in that proceeding, a hearing was held on May 6, 2010 before ALJ Elizabeth Koennecke; however, a decision was not issued because her civil claim was remanded and the two applications were combined.

### iii.) 2011 Decision by ALJ Koennecke.

On August 10, 2011, Plaintiff appeared again before ALJ Koennecke. (T. 1685-1703.) On October 19, 2011, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 428-447.)

Generally, in her decision, ALJ Koennecke made the following five findings of fact and conclusions of law. (T. 431-447.) First, ALJ Koennecke found that Plaintiff met the insured status requirements through December 31, 2010 and Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 434.) Second, ALJ Koennecke found that since her alleged onset date of February 19, 2006, Plaintiff had the severe impairment of lumbar spine DDD. (*Id.*) ALJ Koennecke determined that Plaintiff's cancer, neck condition, right hand/wrist condition, shoulder condition, and depression/anxiety were non-severe impairments. (T. 435-440.) Third, ALJ Koennecke

found that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 441.) Fourth, ALJ Koennecke found that Plaintiff had the RFC to perform a full range of sedentary work. (*Id.*)[1] Fifth, ALJ Koennecke found Plaintiff was unable to perform her past relevant work; however, there were a significant number of jobs that existed in the national economy which Plaintiff could perform. (T. 446.)

### iv.)    2012 AC Remand Order.

On November 2, 2012, the AC granted Plaintiff's request for review and remanded the case for further proceedings. (T. 450-451.) Essentially, the AC Remand Order directed the ALJ to comply with *Davis I*. The order stated: 1) the ALJ's step three analysis required further evaluation, 2) further evaluation was needed regarding the opinion of Nathaniel Gould, M.D., 3) further evaluation was needed regarding Dr. Teglassy, because the decision failed to "point to any specific conflicts between this opinion and the medical evidence of the record," 4) the consistency of Sajid Khan, M.D. and Dr. Gould's opinion needed to be evaluated, and 5) the ALJ's credibility analysis failed to consider Plaintiff's attempts to control her pain. (*Id.*)

### v.)    2013 Decision by ALJ Smith.

On April 15, 2013, Plaintiff appeared before ALJ Jennifer Gale Smith. (T. 1661-1684.) On May 6, 2013, ALJ Smith issued a written decision finding Plaintiff not disabled

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

under the Social Security Act prior to April 23, 2010, but disabled after April 23, 2010. (T. 368-390.)

Generally, in her decision, ALJ Smith made the following five findings of fact and conclusions of law. (T. 376-390.) First, ALJ Smith found that Plaintiff met the insured status requirements through December 31, 2010 and Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 376.) Second, ALJ Smith found that since her alleged onset date of February 19, 2006, Plaintiff had the severe impairment of lumbar spine DDD; however, after April 23, 2010, Plaintiff had the additional severe impairment of disc herniation at C4-5 and C5-6. (T. 376-377.) ALJ Smith determined that Plaintiff's cancer, neck condition (prior to April 23, 2010), right hand/wrist condition, shoulder condition, and depression/anxiety were non-severe impairments. (T. 377-379.) Third, ALJ Smith found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 383.) Fourth, ALJ Smith found that prior to April 23, 2010, Plaintiff had the residual functional capacity ("RFC") to perform:

> at least sedentary work . . . with the ability to lift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in a routine 8-hour workday; and stand/walk 4 hours total in such a workday. The [Plaintiff's] need to alternate between sitting and standing could have been accommodated during normal breaks and lunch hour. She was not limited in her ability to push/pull, reach, handle, and finger. [Plaintiff] might have occasionally stooped, crouched, and crawled. She should perhaps have avoided concentrated exposure to respiratory irritants such as dust, order, fumes, and gases.

(*Id*.) ALJ Smith determined that after April 23, 2010, Plaintiff had the RFC to perform:

> less than sedentary work . . . [an] ability to lift/carry only about 10 pounds; sit 2 hours in a routine 8-hour workday; and stand/walk 2 hours total in such a workday; only occasionally bend [or] twist at the waist; only

6

occasionally perform manipulative tasks with both hands; and would be likely to miss more than three days per month.

(T. 388.) Fifth, ALJ Smith determined that since September 19, 2006, Plaintiff was unable to perform her past relevant work. (*Id.*) ALJ Smith determined that prior to April 23, 2010, there were jobs that existed in significant numbers in the national economy Plaintiff could perform; however, after April 23, 2010 there were no jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 389.)

### vi.) 2014 AC Determination.

On March 26, 2014, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 364-367.) The AC made the following specific findings: 1) the ALJ provided legitimate reasons and an evidentiary basis for the weight afforded to Dr. Tabrizi, Dr. Teglassy, and Dr. Khan, 2) the ALJ's credibility finding was supported by substantial evidence, 3) the ALJ was not required to call on vocational expert ("VE") testimony prior to the established disability date of April 23, 2010, because Plaintiff's non-exertional limitations did not result in a significant erosion of the sedentary occupational base. (*Id.*) Thereafter, Plaintiff timely sought judicial review in this Court.

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in evaluating the opinion of Plaintiff's treating physicians, Dr. Teglassy and Dr. Tabrizi, thereby failing to support the RFC determination by substantial evidence. (Dkt. No. 18 at 13-17 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's credibility finding is unsupported by substantial

evidence because the ALJ erred in considering required factors when assessing Plaintiff's credibility. (*Id.* at 17-18.) Third, and lastly, Plaintiff argues the ALJ's step five determination is unsupported by substantial evidence because she failed to obtain needed VE testimony, despite the presence of significant non-exertional impairments. (*Id.* at 18-20.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated the medical opinion of the record. (Dkt. No. 19 at 5-9 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ correctly found that Plaintiff's subjective complaints were not entirely credible before April 23, 2010. (*Id.* at 9-11.) Third, and lastly, Defendant argues the ALJ properly relied upon the Medical-Vocational Guidelines ("the Grids") at step five. (*Id.* at 11-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B. **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### IV. ANALYSIS

#### A. Whether the ALJ Erred in Evaluating the Opinions of Plaintiff's Treating Physicians, Dr. Tabrizi and Dr. Teglassy.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 19 at 5-9 [Def.'s Mem. of Law].) The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

10

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, see also SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues the reasons ALJ Smith provided for affording weight to Drs. Tabrizi and Teglassy are identical to the reasons provided in previous decisions that this Court found to be unsupported; therefore, remand is again necessary. (Dkt. No. 18 at 15 [Pl.'s Mem. of Law].) Defendant counters that ALJ's decision for affording weight to the medical opinions of the record is supported by substantial evidence and therefore, remand is not necessary. (Dkt. No. 19 at 6 [Def.'s Mem. of Law].)

Plaintiff's main contention is that ALJ Smith's reasons for affording Dr. Tabrizi's and Dr. Teglassy opinions "little weight" are the "very same reasons" provided in the previous decision by ALJ Gale, which this Court remanded; and therefore, remand is required. (Dkt. No. 18 at 15 [Pl.'s Mem. of Law].) To be sure, ALJ Smith's reasons are strikingly similar, if not exact, to the reasons provided by ALJ Gale; however, the error was not the reasons themselves, but the lack of analysis and substantial evidence to support those reasons. The 2012 AC remand of ALJ Koennecke's decision again addressed concerns raised by this Court in *Davis I,* that the previous ALJs did not

11

support their reasoning with substantial evidence. Although ALJ Smith relied on the same reasons, she remedied the faults made by the previous ALJs, because she provided substantial evidence to support her reasoning, and therefore remand is not necessary.

    i.)    Dr. Tabrizi.

Dr. Tabrizi provided mental health services to Plaintiff. In a medical source statement dated August 21, 2007, he opined that Plaintiff had moderate restrictions in her ability to: understand and remember simple instructions, carry out simple instructions, and respond appropriately to changes in a routine work setting. (T. 296-297.) He observed that Plaintiff had marked restrictions in her ability to: make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*)

ALJ Gale stated in his April 25, 2008 decision, that the opinion of Dr. Tabrizi was affording "little weight," because it was "not well supported by the medical record," Plaintiff's depression "responded to medication," and the opinion was "inconsistent with [Plaintiff's] activities." (T. 19-20.) ALJ Gale failed to expand on his terse conclusion affording "little weight" to Dr. Tabrizi's opinion.

In *Davis I*, this Court held that substantial evidence did not support ALJ Gale's determination regarding Dr. Tabrizi. *Davis,* 2010 WL 2545694 (N.D.N.Y. June 21, 2010). On remand, ALJ Koennecke stated that the opinion of Dr. Tabrizi "was

completely unsupported by the evidence of record and was inconsistent with the [Plaintiff's] activities and reported improvement with medication. Therefore, Dr. Tabrizi's opinion was given little weight." (T. 437.) Essentially, ALJ Koennecke evaluated Dr. Tabrizi's opinion using the same reasons as ALJ Gale; however, ALJ Koennecke significantly elaborated on her reasoning for doing so. The 2012 AC remand order did not state that further review of Dr. Tabrizi's opinion was needed. (T. 450.)

ALJ Smith afforded Dr. Tabrizi's opinion "little weight" reasoning that "the opinion was completely unsupported by the evidence of record and was inconsistent with [Plaintiff's] activities and reported improvement with medication." (T. 379.)[2] ALJ Smith's decision provided additional analysis and discussion of the medical record which provided substantial evidence to support the weight she afforded Dr. Tabrizi's opinion.

ALJ Smith ultimately concluded that the opinion of Dr. Tabrizi was inconsistent with the record as a whole. ALJ Smith added, "[w]hile the opinions of the treating physician are always initially accorded the additional weight due them . . . even such opinions must meet the additional requirement set forth at [SSR] 96-2p, where is it specified that these opinions must be adequately supported by clinical/laboratory reporting from the source himself/herself, and furthermore must not be inconsistent with the entirety of the medial file of record." (T. 379.) For example, ALJ Smith incorporated ALJ Koennecke's analysis of consultative examiners Kristin Barry, Ph.D. and Sandra Boehlert, M.D., and State agency medical consultants, Thomas Harding, Ph.D., and Dr. R. Altmansberger. (T. 211, 238, 712, 725.) An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly

---

[2] To be sure, ALJ Smith simply used the same rationale, reasoning and analysis of ALJ Koennecke's analysis of Dr. Tabrizi's opinion.

where the consultants' opinions were supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

Further, ALJ Smith's decision provided a more comprehensive analysis of Dr. Tabrizi's treatment notes which she concluded did not support the limitations outlined in his medical source statement. For example, Dr. Tabrizi observed that Plaintiff was cooperative, related adequately, and had clear speech. (T. 209-210, 314, 316, 715, 879.) He further observed Plaintiff's thoughts were coherent and goal-directed, she was oriented, her attention, memory, and concentration were intact, and she had fair to good judgment and insight. (T. 210, 314-315, 715, 842, 879-880.)

Although ALJ Smith's reasons for affording little weight to Dr. Tabrizi's opinion may have been the same as in preceding remanded decisions, ALJ Smith cured previous defects by providing a more thorough analysis of her reasoning and supporting her conclusions with substantial evidence.

    ii.)    Dr. Teglassy.

Dr. Teglassy provided Plaintiff with general health care. On September 4, 2007, Dr. Teglassy completed a medical source statement. (T. 300-303.) Dr. Teglassy opined that Plaintiff could never lift up to ten pounds and could occasionally carry up to ten pounds. (T. 300.) He observed that in an eight hour workday, Plaintiff could sit for eight hours at a time, stand for one hour at a time and walk for one hour at a time. (T. 301.) Dr. Teglassy stated Plaintiff could occasionally: reach in all directions, handle, finger, and push/pull. (T. 302.) He stated Plaintiff could continuously feel. (*Id.*) He opined she could occasionally use her feet. (*Id.*) Dr. Teglassy observed that Plaintiff could

14

occasionally climb stairs, but could never climb ladders/scaffolds, balance, stoop, kneel, crouch, or crawl. (T. 302.)

ALJ Gale afforded Dr. Teglassy's assessment "little weight," reasoning that the limitations he imposed on Plaintiff were not consistent with the "mild nature" of Plaintiff's DDD or her "daily activities." (T. 20.) This Court remanded, stating that based on the record it was unclear if ALJ Gale's description of Plaintiff's DDD as "mild" was proper. *Davis,* 2010 WL 2545961, at *6.

On remand, ALJ Koennecke concluded, "Dr. Teglassy's opinion was not supported by the objective medical findings, [Plaintiff's] treatment history, or her activities. Therefore, Dr. Teglassy's opinion was given little weight." (T. 442.) The AC remanded, stating the ALJ failed to comply with this Court's remand order to properly evaluation Dr. Teglassy's opinion. (T. 450.) The AC remand order highlighted Dr. Teglassy's limitation to "no stooping." (*Id.*)

Once again, ALJ Smith used the same analysis and reasoning as the bulk of ALJ Koennecke's decision and analysis regarding Dr. Teglassy's medical opinion. (*See* T. 385, T 442-443.) ALJ Smith did however, conduct a new analysis of Plaintiff's ability to perform non-exertional limitations, which was reflected in her RFC determination. (T. 383-384.) ALJ Smith properly concluded that Dr. Teglassy's more limiting restrictions on Plaintiff's ability to perform non-exertional limitations were not supported by the medical record as a whole. For example, Dr. Teglassy's limitations were inconsistent with his one treatment notes. Dr. Teglassy repeatedly observed that Plaintiff appeared in no distress, had a normal gait, had negative straight leg raises, her pain was controlled with medication, and that the range of motion in her lumbar spine was "slightly" reduced

15

due to pain. (T. 772, 775, 779, 782, 784, 785, 788, 795, 797, 800, 802, 805, 809, 821, 834, 842, 849, 852, 855, 859, 862, 866, 871, 874, 942, 1064-1065, 1479.)

ALJ Smith's additional analysis of Plaintiff's ability to perform non-exertional impairments remedied the underlying concerns raised by this Court in 2010 (and the AC in 2012) regarding the analysis of Dr. Teglassy's opinion; therefore, remanded is not required.

### B. Whether the ALJ's Credibility Determination Prior to April 23, 2010 was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 19 at 9-11 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant

has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, ALJ Smith concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible prior to April 2010. (T. 387-388.) Plaintiff argues the ALJ's credibility determination was "speculative" and "point[ed] to no evidence" to support her conclusion. (Dkt. No. 18 at 18 [Pl.'s Mem. of Law].)

Plaintiff's argument that the ALJ pointed to no evidence is without merit. ALJ Smith provided specific evidence from the record in which medical providers observed

17

Plaintiff's level of distress and noted clinical findings which did not support Plaintiff's allegations of symptoms and pain. (T. 387.) The ALJ also took into consideration the type of treatment Plaintiff received to treat her pain. (*Id.*) The ALJ properly evaluated Plaintiff's failure to follow through with recommended treatment in accordance with SSR 96-7p, because the ALJ not only addressed Plaintiff's non-compliance, but also her reasoning for doing so. (*Id.*) Further, the ALJ discussed Plaintiff's activities of daily living and Plaintiff's testimony in relation to Plaintiff's allegations of pain. (T. 384.) Therefore, for the reasons stated herein, the ALJ's credibility determination was supported by substantial evidence.

### C. Whether the ALJ's Step Five Determination was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 19 at [Pl.'s Mem. of Law].) The Court adds the following analysis.

At step five of the sequential process the ALJ must determine whether the plaintiff was able to perform any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The ALJ may rely on the Grids in making a determination. 20 C.F.R. Part 404, Subpart P, App'x 2, *see also* SSR 83-11.

Plaintiff argues the ALJ erred in relying upon the Medical-Vocational Guidelines (commonly called "the Grids") at step five of the sequential process because the ALJ's RFC analysis should have included the limitations imposed by Drs. Teglassy and Tabrizi, and that such limitations would have required the ALJ to call on a VE to provide testimony regarding the number of jobs available in the national economy that Plaintiff could perform. (Dkt. No. 18 at 18-20 [Pl.'s Mem. of Law].) However, this Court

concluded in Part IV.A that substantial evidence supports the ALJ's RFC determination and that the ALJ did not err in failing to include the more restrictive limitations imposed by Drs. Teglassy and Tabrizi. Since the medical evidence failed to establish that Plaintiff had non-exertional limitations that substantially diminished her RFC, no vocational expert testimony was required. *See Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) (holding that VE testimony was required where plaintiff's occupational based would be "significantly diminished," which meant the additional loss of work capacity was beyond a negligible one, or one that so narrowed a plaintiff's possible range of work as to deprive him of a meaningful employment opportunity). Therefore, the ALJ's step five determination was proper and remand is not required.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 15, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge